

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2005

# In Re: Daniel Finney

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4360

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Daniel Finney " (2005). *2005 Decisions.* Paper 1240.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1240

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4360

———

IN RE: DANIEL FINNEY

Debtor

———

ESTATE OF DANIEL FINNEY d/b/a FINNEY CONSTRUCTION

Appellant

v.

DENNIS J. SPYRA, ESQUIRE

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-01125)
District Judge: Honorable David S. Cercone

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2005

Before: McKEE, VAN ANTWERPEN, and WEIS, Circuit Judges

(Filed: May 5, 2005)

———

OPINION OF THE COURT

VAN ANTWERPEN, <u>Circuit Judge</u>.

Now before us is an appeal by Debtor-Appellant Daniel Finney ("Finney") of a Memorandum Order of the United States District Court of the Western District of Pennsylvania affirming an Amended Order of the United States Bankruptcy Court for the Western District of Pennsylvania granting costs and fees to Dennis J. Spyra, Esq. ("Spyra") in the sum of $64,537.85. For the foregoing reasons, we affirm the District Court in part and reverse in part.

## I. Facts

Because the only dispute between the parties in the instant case is one concerning the contingent fee arrangement between Finney and Spyra, we need only restate the facts pertinent to that claim. Spyra was retained by Finney in 2000 to file a petition under Chapter 11 of the United States Bankruptcy Code. Spyra was to be paid for this service at a rate of $150.00 per hour, and filed a Chapter 11 petition on Finney's behalf on September 13, 2000.

In the summer of 2000, a fire destroyed a residential building and damaged a nearby barn on Finney's estate. His insurer, Royal SunAlliance Insurance Company ("Royal") initiated an investigation, and ultimately alleged that Finney had contributed to the arson that destroyed his property. On October 25, 2000, Royal formally denied

2

Finney's insurance claim. Soon after, Spyra agreed to represent Finney in an action against Royal for its denial of Finney's claim under the insurance policy. This action was filed in United States Bankruptcy Court, but was later transferred to District Court. Pending resolution of the claim, Royal paid Finney's mortgagee the outstanding balance on the estate's mortgage, which it was required to do under the insurance contract.

On April 2, 2001, Finney signed a contingent fee agreement with Spyra entitling Spyra to (in addition to all costs and expenses) one-third of "all funds or property accruing to [Finney] as a result of [Spyra's] service [in connection with any legal action against Royal]." The fee agreement was approved by the Bankruptcy Court on May 9, 2001.

Following a trial in the suit against Royal, a jury returned a verdict in favor of Finney in the amount of $600,000.[1] After the set-off payment for the mortgage that had already been paid was deducted from the award, judgment was entered for Finney in the amount of $147,225.54 plus $38,584.08 in prejudgment interest. Because the jury awarded Finney $638,584.08, Spyra sought compensation under the contingent fee arrangement in the amount of $212,861.00 for legal representation in the insurance suit. Finney refused to pay, and Spyra sought leave of the Bankruptcy Court to compel Finney to sign over the proceeds from the insurance company. Leave was granted, and Spyra

---

[1] The jury found in favor of Royal with regard to Finney's claim that it had acted in bad faith. Consequently, the jury did not award Finney punitive damages or attorney's fees. The jury also found against Royal on its counterclaims for arson, fraud, and misrepresentation.

presented his application for payment to the Bankruptcy Court. Finney objected, and the Bankruptcy Court conducted an evidentiary hearing. At the conclusion of that hearing, the Bankruptcy Court concluded that (1) the contingent fee agreement was an enforceable agreement that was separate from Spyra's representation of Finney in the Chapter 11 case, (2) the contingent fee agreement was reasonable, and (3) Finney was an intelligent and articulate businessman who was aware of the essential terms of the agreement before he signed it. Accordingly, the Bankruptcy Court entered an Amended Order on May 23, 2003, awarding Spyra $64,537.85.[2]

Finney appealed these findings and the Bankruptcy Court's Amended Order to the District Court. On review, he contended that (1) the contingent fee agreement was unconscionable, (2) he was denied due process, and (3) the Bankruptcy Court allowed Spyra to recover double payment for his services. The District Court ruled in favor of Spyra as to each claim of error, and affirmed the Amended Order. Finney then timely appealed to this Court.

On appeal before us, Finney argues three points: (1) the contingent fee agreement is unconscionable and is not enforceable as it is unreasonable; (2) both the Bankruptcy Court and the District Court made manifest errors of fact; and (3) both the Bankruptcy Court and the District Court erred in not finding that Spyra received duplicate pay for the

---

[2] This amount is the total owed to Spyra (including costs for representing Finney in all Chapter 11 matters) minus the proceeds from the insurance company that were signed over to him. This amount was claimed against Sypra's bankruptcy estate.

same service.

**II. Jurisdiction and Standard of Review**

The Bankruptcy Court had subject matter jurisdiction to entertain the instant case pursuant to 28 U.S.C. § 157(b). The District Court had appellate jurisdiction over the final order of the Bankruptcy Court in favor of Spyra pursuant to 28 U.S.C. § 158(a)(1). Our jurisdiction is grounded in 28 U.S.C. §§ 158(d) & 1291. "Exercising the same standard of review as the [D]istrict [C]ourt, we review the [B]ankruptcy [C]ourt's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." In re United Healthcare System, Inc., 396 F.3d 247, 249 (3d Cir. 2005) (citations and internal quotation marks omitted).

**III. Discussion**

As a threshold matter, we first address Spyra's contention that Finney's claim to recover any portion of the contingent fee is barred by the doctrines of *res judicata* or collateral estoppel. We agree with Finney that Spyra's failure to raise these arguments below constitutes waiver. "The general rule is that the failure to plead or raise in a timely manner matters calling for the application of the doctrines of *res judicata* and collateral estoppel is regarded as a waiver." 47 Am. Jur. 2D *Judgments* § 717 (2004); see also Rycoline Prod., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) ("*Res*

5

*judicata* is an affirmative defense and not a doctrine that would defeat subject matter jurisdiction of this court."). Consequently, as this is the first time Sypra has raised these arguments, we cannot entertain them.

Turning to the merits of this case, Finney first contends that the contingent fee agreement is unconscionable and hence not enforceable because its terms are unreasonable. As we have said before, "courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable parties." Ryan v. Butera, Beausang, Cohen & Brennan, 193 F.3d 210, 215 (3d Cir. 1999). That being said, a District Court must be alert to a fee agreement that would unjustifiably enrich an attorney through oppression or overreaching. See McKenzie Const., Inc. v. Maynard, 758 F.2d 97, 102 (3d Cir. 1985).

After a review of the record, we agree with the District Court that Finney has not demonstrated that the contingent fee agreement between him and Spyra is unconscionable. In Pennsylvania,[3] the test for unconscionability is two-fold: first, one of the parties to the contract must have lacked a meaningful choice about whether to accept the provision in question; and second, the challenged provision must unreasonably favor the other party to the contract. Koval v. Liberty Mut. Ins. Co., 531 A.2d 487, 491 (Pa.Super. 1987). Here, the Bankruptcy Court found, and the District Court agreed, that

---

[3] Whether or not a contract is unconscionable is quintessentially a question of state law. As such, we apply the law of the Commonwealth of Pennsylvania to this claim. Erie R. R. v. Tompkins, 304 U.S. 64, 78 (1938).

Finney was "an intelligent, articulate businessman who ran more than one business" who "was aware of all the essential terms of the agreement, and also understood the ramifications of signing the agreement." Memorandum Order of the District Court at 4. Finney has adduced no evidence countering these findings, nor can we find any on independent review.[4] We therefore will not unseat the conclusions of both the Bankruptcy Court and the District Court that Finney had a meaningful choice as to whether or not he would submit to the contingent fee agreement.

Moreover, the agreement does not unreasonably favor Spyra. A contingent fee agreement will be considered valid and enforceable only where it is fair, just, and reasonable. 7A C.J.S. *Attorney & Client* § 395 (2004). The Third Circuit has adopted the "equity and fairness standard" for determining whether or not an attorney's fee is reasonable.[5] Ryan, 193 F.3d at 214. Under this standard, "a court must evaluate the contract as to its reasonableness both as of the time the parties entered into it and in light of subsequent circumstances concerning performance and enforcement, which may make a contract unfair in its enforcement." Id. at 215 (internal quotation marks omitted). The agreement requires that Spyra be paid one-third of all funds or property accruing to

---

[4] We are especially persuaded by Finney's admission to the Bankruptcy Court that he negotiated Spyra's contingent fee percentage from 40% to 33 1/3%. Appendix to Brief of Appellant at 333a.

[5] We have previously held that we must apply federal law to the examination of a contingent fee arrangement's reasonableness, as such review implicates our responsibility to supervise the members of our Bar. Dunn v. H.K. Porter Co., Inc., 602 F.2d 1105, 1110 n.8 (3d Cir. 1979).

Finney as a result of Spyra's services in the insurance suit. We find this provision to be unambiguous. This was a fair and reasonable bargain on the day that Finney signed the agreement, and remained so throughout his relationship with Spyra. The position that Spyra takes–that he is entitled to one-third of the $600,000 award, and not merely the net money paid directly to Finney–is reasonable when we consider that Finney not only received a money judgment in the amount of $147,225.54, but also free and clear title to a formerly encumbered property.[6] To restrict Spyra's access to the majority of the jury verdict (the money used to satisfy Finney's obligation to his mortgagee), simply because it was paid directly to the mortgagee prior to the rendering of the verdict in the insurance suit, is an inequitable perversion of an otherwise clear contract. Because we conclude that the contingent fee agreement envisioned payment of one-third of the total award, and because we further conclude that the fees sought by Spyra are reasonable given the verdict in Finney's insurance claim, the contingent fee agreement is not unconscionable.

Moving next to Finney's contention that the Bankruptcy Court erred in its findings of fact, we conclude that none of the factual findings pointed to by Finney were clearly erroneous. Without belaboring the point, Finney again points to nothing in the record that

---

[6] In Pennsylvania, a contingent fee is considered reasonable if it is computed upon the amount of actual recovery, not on the amount of the verdict rendered. Miernicki v. Seltzer, 458 A.2d 566, 569 (Pa.Super. 1983), aff'd 479 A.2d 483 (Pa. 1984). For example, an attorney whose client's jury award has been reduced by a counterclaim cannot claim as his fee a percentage of the jury verdict, but rather the net proceeds received by his client after the counterclaim amount has been deducted. Such is not the case here.

8

supports his claims of error with regard to the Bankruptcy Court's findings of fact.

Finally, there is one point on which we part company with the District Court: duplicative fees. We disagree with the District Court that enforcement of the contingency fee agreement will not cause duplicative billing with regard to work done by Spyra on Finney's insurance suit prior to the signing of the contingent fee agreement. Despite the District Court's assertion to the contrary, we note that the itemized bill sent to Finney on September 3, 2002, contains numerous billing entries regarding the insurance suit against Royal, specifically for legal research and preparation of the "Turnover Complaint." The contingent fee agreement covers "any action arising from a dispute with Royal & Sun Insurance Company," and there is no language in the agreement restricting its coverage to representation that occurred after the date the agreement was signed-we thus read the contract to be unambiguous in terms of what services are covered. As such, we conclude that the contingent fee agreement covers all legal representation associated with the insurance suit, and consequently, any hourly fees charged to Finney in connection with this suit must be stricken as duplicative.

## IV. Conclusion

For these reasons, we affirm the District Court in part and reverse in part. On remand, we instruct the District Court to further remand this case to the Bankruptcy Court with instructions to (1) strike any hourly fee charged by Spyra for work dealing with

9

Finney's insurance suit against Royal, and (2) alter its Amended Order of May 23, 2003

accordingly.

_____